JOHNNIE BRYANT v. THE STATE.

No. 15473.   Delivered November 9, 1932.
Rehearing Denied January 11, 1933.
Reported in 55 S. W. (2d) 1037.

The opinion states the case.

*King, Mahaffey, Wheeler & Bryson,* of Texarkana, Texas, and *John N. Cook,* of Texarkana, Ark., for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is robbery with firearms; the punishment, confinement in the penitentiary for twenty-five years.

H. M. Brock, the injured party, was cashier of the Cotton Oil Company of Texarkana. About two years before the robbery appellant had had a transaction with Mr. Brock, in which he had bought some cotton-seed hulls. It appears that Mr. Brock had not seen appellant since the occasion last mentioned until the day of the robbery. Touching the circumstances surrounding the commission of the offense, Mr. Brock testified on direct-examination, in substance, as follows: He was in his office at work when appellant entered the room, held a pistol on him and directed him to "stick 'em up." Appellant was holding the pistol in his left hand and in his right hand he had a four or five pound paper bag. Complying with appellant's request, the witness put his hands up. Appellant handed him the paper bag, directing him to get the money out of the safe and put it in the bag. Complying with appellant's request, he placed thirty or forty dollars in the bag, and handed it to appellant. At this point we quote the testimony of the witness as follows:

"I had the sack in my left hand. At the time I handed him the sack he was standing three or four feet from the safe,— hardly that far. I was standing between him and the safe. He was hardly that far (indicating). I could reach him when I turned. When I handed him the sack I handed it to him with my left

hand. When I handed him the sack he reached out and took hold of it. He took the sack with his right hand. I said that he took the sack when I handed it to him. You ask me what I did with the sack. I turned to hand it to him. Yes, I handed it to him. * * * He took hold of the sack,—we both had hold of the sack. * * * I turned loose of the sack. I did that after he took hold of it. The pistol during that time was in his left hand pointing at me. During the time this was going on he was cursing me and telling me he was going to kill me and trying to intimidate me I would think. Yes, he was cursing me and telling me to hurry. * * * Well at the time I handed him the sack I grabbed the gun and struck him, with my left hand. I grabbed the gun with this hand (indicating) and turned the sack loose and hit him on the chin enough to start him backward and across the desk, the typewriter desk and flat top desk. I grabbed the gun with my right hand. When I grabbed the gun we went over the desk. I was right against him. We had the gun, he in his left hand and I with my right hand, which discharged and went through my index finger of my right hand. I got the gun away from him and hit him over the head with it. * * * The sack with the money in it was lying there on the desk and went with us as we went over. After I got the gun out of his hand and hit him I told him I was going to kill him and he begged me not to,—I don't know,—I hit him over the head again and Mr. Hunt walked in. * * * I took the money that was in the sack and put it back in the safe. * * * You ask me why I got the money and gave it to him,—because he had a gun on me and told me to or he would kill me. I was in fear of my life or bodily injury or I would not have given him the money."

On cross-examination the witness testified that when appellant entered the room and pointed the pistol at him he told appellant to come around in the office, having in mind at the time not to let appellant get the money, but to keep him from it; that he did not determine to take hold of appellant in an effort to recover the money until he was handing appellant the sack. We quote from his testimony on cross-examination, in part, as follows: "As he reached and took hold of the sack we both had hold of the sack for a split second, naturally. When he got hold of the sack, at the same time I grabbed the gun. You ask me if it is not true that I did not turn loose of the sack until I grabbed the gun. Well, this all happened within a split second, the whole movement. As far as I recollect now when he reached out for the sack I undertook to hand him the sack and in that very same act I grabbed for the gun. That

was when I saw my opportunity. * * * When I handed him the sack and he took hold of it, naturally both of us had hold of it for a short time together. At that very same time, while we both had hold of the sack, that is when I grabbed the gun and turned loose, within the next split second, the sack and hit him with the hand that had the sack."

On redirect examination the witness testified as follows: "He just reached over the back and got hold of the money like this (indicating). At the same time I did like this (indicating) and we went over the desk. After I hit him with my left hand, he had hold of the money when I turned it loose. You ask me if I left it in his right hand. That is the hand he took hold of it with. When I hit him with my left hand I had·then turned the money loose. At the time I hit him with my left hand he had hold of the money I presume. You ask me if I know where it was. I turned the money loose as he took hold of it. That was the last time I had my eyes on the money. The next time I saw it it was lying on this desk."

Appellant insists that the evidence is insufficient to support a conviction for robbery, his position being that the proof fails to show that the money was brought under his dominion and control. The court submitted a charge covering the law of assault with intent to rob. Pursuant to appellant's request, the court instructed the jury as follows: "Now unless you believe from the evidence beyond a reasonable doubt that the defendant, Johnnie Bryant, actually secured the absolute dominion or the absolute control from H. M. Brock, of the sum of ($30.00)· thirty dollars in money, or any sum of money on or about the 24th day of December, 1931, as alleged in the indictment, you will find the defendant not guilty of robbery and so say by your verdict."

In his Annotated Penal Code, section 2427, Mr. Branch states the rule as follows: "To constitute a taking, the property must be brought under the dominion and control of the defendant with power to take it into his manual possession; if the property is attached to the owner or to something else the taking is not complete if the attempt to take it is interrupted before it is severed or detached.

In support of the text the following authorities are cited: Rodriguez v. State (Texas Crim. App.), 71 S. W., 596; Tarrango v. State, 44 Texas Crim. Rep., 385, 71 S. W., 597; Herr v. State, 52 Texas Crim. Rep., 53, 105 S. W., 190; Walters v. State, 56 Texas Crim. Rep., 10, 118 S. W., 543; Clark v. State, 59 Texas Crim. Rep., 246, 128 S. W., 131.

We deem the evidence sufficient to support the finding that appellant had brought the money under his dominion and control. The injured party testified, in effect, that he delivered the money to appellant because he was afraid he would shoot him. He testified, further, that he handed the money to appellant and turned loose of the sack at the time he grabbed the pistol in an effort to recover the property.

Appellant testified that he had been drinking whisky on the occasion of the robbery and that he lost consciousness. He said he had no recollection whatever of having committed the offense. Officers arresting appellant testified that they smelled no whisky on appellant's breath. Witnesses for appellant said that they went to the jail immediately after appellant's arrest and that he appeared to be drunk. They testified that they smelled whisky on his breath. Members of appellant's family testified to acts and conduct on his part since childhood evidencing a retarded mental development. They said that he had received a lick on the head when he was a child. A physician who had examined appellant stated that appellant had probably been insane since childhood. He said that appellant's mind was that of a twelve year old boy. He was of the opinion that appellant did not know the difference between right and wrong at the time he committed the offense. He testified: "If he was insane on that particular day it is impossible to say when he became insane. At that time he still had his fundamental insanity. You ask me if at that time he was sane or insane. He has had his fundamental insanity for years."

The evidence further raised the issue that appellant became temporarily insane when he used intoxicating liquor.

Appellant made no effort to have the issue of general insanity submitted to the jury. On the contrary, he desired that the court submit only the issue of temporary insanity. On the issue of temporary insanity, the court instructed the jury that "the defense of temporary insanity is established when it is shown by a preponderance of the evidence that at the time of committing the act the mental condition of the accused was such as to deprive him of a knowledge of the right and wrong of the act or acts of which he is charged with having committed." Further, the court instructed the jury that neither intoxication nor temporary insanity produced by the voluntary recent use of ardent spirits constituted any excuse or defense to the commission of crime, but could only be considered by the jury in mitigation of the penalty. However, in the same connection the jury were charged as follows: "Yet if the accused is in any

degree mentally impaired or infirm, and such impairment or infirm condition of his mind was stimulated or aggravated by the use of intoxicants to such an extent as to cause the accused to become temporarily insane, as that term has hereinbefore been defined to you, then such temporary insanity if found by the jury by a preponderance of evidence, to have existed at the time of the commission of the offense or offenses, will excuse or justify the act or acts alleged to have been committed by the accused. Now if you believe from a preponderance of evidence that the defendant, Johnnie Bryant, at the time of the alleged robbery, or at the time of the alleged assault with intent to rob, was temporarily insane, as the result of an impaired or infirm condition of mind, or as a result of a combination of an impaired or infirm condition of mind and intoxication, to the extent that he did not know right from wrong, or the nature and quality of his acts, then you will acquit the defendant and say by your verdict not guilty."

Appellant sought to have the court instruct the jury, in substance, that if temporary insanity is the result of the recent use of ardent spirits, which the accused on account of an "impairment or enfeeblement to that part of the mind known as the will power" was unable to resist or to know the effect of such intoxicating liquor, then that such temporary insanity would excuse and justify the acts constituting the offense, even though such temporary insanity was produced by the recent use of ardent spirits. We deem this charge to embody an incorrect proposition of law and express the opinion that the court amply protected appellant's rights in his charge on temporary insanity. Of course if appellant had sought a charge on general insanity it would probably have been error to have refused it, but he did not want such an instruction, but desired only a charge on temporary insanity. The instruction on temporary insanity hereinbefore quoted was a substantial copy of one of appellant's requested charges on the subject.

In his objection to the court's charge appellant urged that the charge was insufficient, in that the jury were not instructed that temporary insanity might be produced by a weak and infirm condition of the mind independent of intoxication. It is observed that in the court's charge the jury were instructed as follows: "Now if you believe from a preponderance of the evidence that the defendant Johnnie Bryant, at the time of the alleged robbery, or at the time of the alleged assault with the intent to rob, was temporarily insane, as a result of an impaired or infirm condition of. mind, or as the result of a combination of

an impaired or infirm condition of mind and intoxication, to the extent that he did not know right from wrong, or the nature and quality of his acts, then you will acquit the defendant and say by your verdict not guilty.' "

It is apparent from a reading of the foregoing charge that the jury were expressly advised to acquit appellant if they believed he was temporarily insane "as a result of an impaired or infirm condition of mind."

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

HAWKINS, J., not sitting.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Robbery and theft are of the same family; violence, or the threat of same, in order to obtain property, being about the only difference. Reese v. State, 91 Texas Crim. Rep., 457.

By article 1412, P. C., asportation of stolen property is made unnecessary, and it is said therein that if such property has been in the possession of the alleged thief but for a moment—even though not moved from the presence of the owner—this is a taking, under our theft laws. Appellant insists that he at no time took the alleged stolen property into his possession. We think the record is against him on this point. Clearly the sack containing money of the owner passed completely into the possession of appellant, though this is not required under the authorities. The testimony quoted in our original opinion shows that after putting the money in said sack, in accordance with appellant's demand, the owner handed it to appellant with his left hand. Appellant took hold of the sack which was then at once completely released to appellant by the owner, who testified that he grabbed for appellant's gun with his right hand and struck appellant with his left hand. The owner testified: "I turned the money loose."

We fail to see any benefit to appellant arising from the owner having his mind made up not to let appellant get away with the money if he could prevent it. The guilt of appellant is based on his own acts and his own frame of mind, not those of the owner. If appellant assaulted, and, by said assault and violence, induced the owner to deliver to him for a moment the

money of said owner, the case would be made out. See Harris v. State, 29 Texas Crim. Rep., 101, and cases cited therein. This case has been approved in numerous instances to be found in the citators. See, also, Jarrott v. State, 108 Texas Crim. Rep., 427.

We have reviewed the charge of the court on temporary insanity and think it both fair and favorable to appellant.

The motion for rehearing will be overruled.

*Overruled.*