**Charles Bartling EVILSIZER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 45198.**

Court of Criminal Appeals of Texas.

Nov. 1, 1972.

Rehearing Denied Dec. 13, 1972.

Emmett Colvin, Jr., Don J. Metcalf, Dallas, for appellant.

Henry Wade, Dist. Atty., Robert T. Baskett, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of murder; punishment was assessed by the jury at life.

The record reveals that on November 15, 1967,[1] appellant and deceased, the aunt of appellant's estranged wife, were talking in the front yard of deceased's home in Dallas. Following a brief argument, deceased struggled with appellant and shouted to a neighbor, "look out, he's got a gun." During the struggle deceased fell to the ground and appellant put a gun to her head, and said, "This will shut you up, damn you." He then shot her and she died from the gun shot wound. Appellant then left in his car. Early the following morning appellant was arrested at his home, where a bloody shirt was found. Later, a .25 caliber hull was found in appellant's car which was parked a block from the scene of the killing.

Appellant testified in his own behalf and stated: that during World War II he received a blow on the head; that since 1946 he has had a drinking problem; and that he received a blow to the head from a pipe in 1966. He testified that on the day of the killing he borrowed a .25 caliber pistol to go deer hunting; that he consumed around eight beers, two highballs, and "quite a bit" of a fifth of bourbon. He further stated that about 5:30 P.M. he called deceased to talk with his estranged wife; that deceased refused to allow him to talk to her and hung up. From that time until awaking after dark, sometime between 6:00 and 11:00 P.M., he had no memory of events.

Appellant called a psychiatrist who testified that, in his opinion, the appellant was suffering from a chronic brain syndrome known as Korsakov's syndrome on the day of the offense and did not know the difference between right and wrong. He testified that, in his opinion appellant's prolonged, immoderate use of alcohol over a period of years had given him the syndrome. He further testified that " . . . it is possible that his dietary habits could have produced this (syndrome) without his alcohol. I think it is less likely that it would have without the alcohol." The psychiatrist testified that the usual symptom of chronic brain syndrome is that "a person becomes more and more sensitive to alcohol or other intoxicating substances;" that he suffers periods of amnesia and will create in his mind facts and situations that may or may not exist, to fill in the gaps created by the amnesic periods; that through this process, a person suffering from the syndrome may act irrationally. It was his conclusion that appellant was insane on the date of the offense, but "entirely sane" as of the date of the trial.

The state produced two psychiatrists who testified that appellant was in their opinion sane both at the time of the offense and at the time of trial.

The court included in its charge an instruction on insanity,[2] but refused appel-

1. Judgment was entered in the trial court on January 29, 1969, and the record was filed in this court January 12, 1972.

2. The trial court's instruction on insanity was as follows: "You are instructed that no act done in a state of insanity can be punished as an offense. Every man is presumed to be sane until the contrary appears to the jury trying him. He is presumed to entertain, until the contrary appears, a sufficient degree of reason to be responsible for his acts; and to establish a defense on the ground of insanity, it must be shown by a preponderance of the evidence that at the time or times inquired about, the party accused was laboring under such defect of reason as not to know the nature and quality of

the act he was doing, or if he did know, that he did not know he was doing wrong, that is, that he did not know the difference between the right and wrong as to the particular act charged against him. The insanity must have existed at the very time or times inquired about, that is, at the very time of the alleged commission of the offense, and the mind must have been so dethroned of reason as to deprive the person accused of a knowledge of the right and wrong as to the particular act done.

"The burden of proof, as to insanity, is upon the defendant to prove his insanity by a preponderance of the evidence. By the term 'preponderance of the evidence' is meant the greater weight of the credible testimony.

lant's requested special instruction which included:

". . . if the accused is in any degree mentally impaired or infirm, and such impairment or infirm condition of his mind was stimulated or aggravated by the use of intoxicants to such an extent as to cause the accused to become temporarily insane, . . . then such temporary insanity if found by the jury by a preponderance of evidence, to have existed at the time of the commission of the offense or offenses, will excuse or justify the act or acts alleged to have been committed by the accused."

Appellant's ground of error relates to the trial court's charge. His complaint is twofold: first, that the court erred in denying his requested instruction; and second, that the court erred in charging the jury on the provisions of Article 36, Vernon's Ann.P. C.

In his first assertion, appellant argues that an instruction, similar to the one he requested, was given in Bryant v. State, 122 Tex.Cr.R. 385, 55 S.W.2d 1037, and that therefore it was error to deny his requested instruction in the case at bar. We do not interpret *Bryant* as holding that the instruction given there was required under the facts of that case. The case merely stands for the proposition that such an instruction *did not injure* the appellant.[3]

The question presented by appellant is whether temporary insanity, produced by the combined effect of a pre-existing, weakened condition of the mind and the recent consumption of intoxicants, constitutes a defense to murder with malice.

The record here in relevant respects fairly duplicates that considered by this court in Chapman v. State, 136 Tex.Cr.R. 285, 124 S.W.2d 112. Therein, the defendant sought to have the jury instructed that if they believed defendant had syphilis, and if they also believed that such disease, coupled with the recent use of intoxicants, produced a state of temporary insanity, the verdict should be not guilty. In overruling the request, this court stated, at pages 115–116:

"Although it may be conceded that he had syphilis, if this alone did not produce temporary insanity, but the voluntary recent use of ardent spirits in addition thereto caused him to become temporarily insane, then the recent use of ardent spirits would be the direct and immediate cause of the claimed insanity, but for which he would not have been temporarily insane.

"Consequently it follows that although he may have had syphilis or may have been in a weakened physical condition due to some other cause, yet if the recent use of ardent spirits was the primary cause which produced the temporary insanity, he would be in the same condition, in the eyes of the law, as a healthy, robust man who indulged in the use of ardent spirits and as a result became temporarily insane. It may be true that a

"Now, if you believe from the evidence beyond a reasonable doubt that the defendant, Charles Bartling Evilsizer, did kill Ruth Gunnels by shooting her with a gun, as alleged in the indictment, but you further believe, by a preponderance of the evidence, that at the time he committed the said act, if he did, the defendant was then insane, as that term is herein defined for you, then you will find the defendant not guilty by reason of insanity and so state in your verdict."

3. In *Bryant*, the trial court charged that if the accused was in any degree mentally impaired or infirm, and such impair-

ment or infirm condition was stimulated or aggravated by the use of intoxicants to such an extent as to render him temporarily insane, such insanity could, if found to exist, excuse his criminal act. What the appellant complained of in *Bryant* was the trial court's refusal to further charge that temporary insanity resulting from the use of intoxicants can be a defense to crime if such use resulted from an impairment of the willpower that made the accused unable to refrain from the use of intoxicants. In overruling the complaint this court stated that the charge given was "both fair and favorable to appellant."

person affected with syphilis is more susceptible to intoxication. This, however, would not constitute any defense, but under the law might be considered by the jury in mitigation of the punishment to be assessed."

We therefore hold that, if the pre-existing condition of mind of the accused is not such as would render him legally insane in and of itself, then the recent use of intoxicants causing stimulation or aggravation of the pre-existing condition to the point of insanity cannot be relied upon as a defense to the commission of the crime itself. Compare, Chapman v. State, supra, with Article 36, V.A.P.C.

No error is shown by the refusal to give the aforementioned requested charge.

Appellant contends the court erred in charging the jury on the provisions of Article 36, V.A.P.C. for three reasons.

First, he argues that by charging the jury that ". . . neither intoxication nor temporary insanity of mind produced by the voluntary recent use of ardent spirits, or intoxicating liquor shall constitute any excuse for the commission of crime," the jury was precluded from considering insanity (caused by the recent use of intoxicants) as a circumstance to determine whether appellant had the mental capacity at the time of the offense to entertain the simple intent to kill or to form malice aforethought.

This argument has been rejected by this court many times. Article 36, V.A.P.C. provides:

"Neither intoxication nor temporary insanity of mind produced by the voluntary recent use of ardent spirits, intoxicating liquor, or narcotics, or a combination thereof, shall constitute any excuse for the commission of crime. Evidence of temporary insanity produced, however, by such use of ardent spirits, intoxicating liquor or narcotics, or a combination thereof, may be introduced by the defend-

ant in mitigation of the penalty attached to the offense for which he is being tried.

"When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was brought about by the immoderate use of intoxicating liquor or by narcotics or by a combination thereof, the judge shall charge the jury in accordance with the provisions of this Article."

This court stated in Garcia v. State, 453 S.W.2d 822, that "(t)he contention that intoxication would prevent an accused from forming the intent to commit the crime is in conflict with Article 36, Vernon's Ann.P.C., which provides that intoxication is no defense to crime." See also, e. g., Romero v. State, Tex.Cr.App., 471 S.W.2d 799; Williams v. State, Tex.Cr.App., 463 S.W.2d 15; Dodd v. State, Tex.Cr.App., 436 S.W.2d 149; Dubois v. State, 164 Tex.Cr.R. 557, 301 S.W.2d 97; Forbes v. State, 143 Tex. Cr.R. 180, 157 S.W.2d 900.

Appellant contends that the testimony shows that if he was insane at the time of the offense, it was due to a brain syndrome known as Korsakov's syndrome. Further, that if he did suffer from Korsakov's syndrome, the syndrome was probably caused by his prolonged immoderate use of alcohol. There was also evidence that appellant drank a considerable amount of intoxicating liquors on the date of the offense which may or may not have aggravated or stimulated his pre-existing condition of mind to a point of insanity. In other words, his condition of mind, his Korsakov's syndrome, may have rendered him insane without considering his recent intake of alcohol on the day of the offense.

Appellant argues that by instructing that, ". . . neither intoxication nor temporary insanity of mind produced by the voluntary recent use of ardent spirits, or intoxicating liquor shall constitute any excuse of the commission of crime," the jury was in effect instructed that they could not consider his condition of mind, his Korsa-

kov's syndrome, if the syndrome was caused by the continued use of intoxicating liquor. We disagree with appellant's deduction. The instruction was in accordance with Article 36, V.A.P.C., and was restricted to the *recent* use of intoxicating liquors. The jury was free to find appellant insane due to a long continued use of intoxicating liquors but chose not to do so.

Finally, the court did not comment on the weight of the evidence by instructing the jury in accordance with Article 36, V.A.P.C. See, e. g., Valdez v. State, Tex. Cr.App., 462 S.W.2d 24; Dodd v. State, supra.

Finding no reversible error, the judgment is affirmed.