## LEROY KELLEY v. THE STATE.

No. 19162. Delivered January 12, 1938.

The opinion states the case.

*James A. Gowdy,* of Olton, and *E. A. Bills,* of Littlefield, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—The offense charged herein is murder, and the punishment assessed is death.

It appears from the indictment that the appellant Leroy Kelley, a negro, was charged with the unlawful killing of F. A. Loyd by shooting him with a gun on March 20, 1937. The testimony shows that Mr. Loyd was the sheriff of Lamb County, and that on April 5th, after Mr. Loyd was shot, the district judge convened a special term of the court which met on such date and indicted the appellant for such killing; his trial being begun on April 9, 1937, and concluded on April 10, 1937, and the appellant was awarded such penalty by the jury at such time.

In bill of exceptions No. 1 appellant complains of the court's allowing the witness O. B. Gordon to testify as to the fact of the appellant drawing a pistol on witness' brother at some time in the afternoon of the day and just preceding this killing, which occurred at about 7 or 7:30 o'clock at night. To the same effect is appellant's bill of exceptions No. 3 to the testimony of James Boykin. This witness testified that he heard a shot about sundown in Willie Foster's house, and saw the negroes running out of said house, and the appellant came out of said house, and afterwards waved his, appellant's pistol at witness, and told the witness to "get going," which witness proceeded to do. To the same effect is bill of exceptions No. 6 as to the testimony of William Gordon relative to the appellant pointing a pistol at the said witness at or about the time testified to by the above named witnesses.

We think that all these above bills can be disposed of at the same time. We think this testimony was admissible on two grounds: First, as showing the malice with which the appellant acted at the time of the shooting of Mr. Loyd; and as

clearly evidencing a heart regardless of social duty and fatally bent on mischief, the existence of which may be inferred from acts done or words spoken. In other words, such testimony would show conclusively to our minds that appellant cared naught for the rights of others, nor what duty he owed to his fellow man; that he was fatally bent on mischief against society at large, or any of its constituent members that came within his displeasure. Such actions beginning in the early afternoon and continuing practically up to the time of the killing, would certainly evidence the fact that appellant was fatally bent on mischief. In our judgment this presents a typical case that can illustrate this stereotyped definition of malice. In the second place, this evidence,—taken along with the statements made by James Boykin and O. B. Gordon relating what these two witnesses told the sheriff and his deputy, as they recounted these assaults of the appellant to such sheriff and his deputy, Mr. Hutson,—would be admissible in order to show the legal authority of the sheriff to apprehend this appellant without first obtaining a warrant for his arrest.

What we have said above disposes also of bill of exceptions No. 2, wherein appellant complains of the witness O. B. Gordon testifying as to telling Sam Hutson, the deputy sheriff, of the recent occurrences concerning appellant and his activities with his pistol on the afternoon a short time before this killing. If the testimony of the actual occurrence was admissible, it seems that the sheriff's knowledge thereof should also be admissible, especially in order to show that such sheriff was proceeding lawfully when he endeavored to arrest the appellant at the scene of the killing. We do not agree with appellant's attorneys when they say in their bill that such testimony does not show the commission of a felony. An assault with a weapon, the carrying of which is prohibited by law, is a felony, and punished as such. If the witness' testimony is true, then appellant was guilty of the commission of a felony,—Art. 1151, Penal Code 1925,—as well as guilty of unlawfully carrying a pistol, which would justify the sheriff in making an arrest without a warrant, see Branch's Annotated P. C., page 1114; and it seems to us that these occurrences were a continuous transaction, and became a part of and were interwoven with the final act that culminated in the death of Mr. Loyd, and are all explanatory of the condition of appellant's mind as well as the motives and reasons that caused the sheriff to accost the appellant at the scene of the fatal difficulty. We see no error reflected in such rulings by the court.

There is a further complaint, as shown by appellant's bill of exceptions No. 4, wherein he objected to the witness Boykin relating on the stand what he had told Deputy Hutson in an endeavor to describe to him the person who had been creating the disturbances down in what was termed "The Flats" in the city of Littlefield, which Flats was presumably the negro section thereof. Upon being told about such disturbances, and being asked who was the person creating the same, he answered "Leroy," and being asked what Leroy, witness said: "Mr. Hutson, that drunk Leroy that's always raising sand down there." Such statement seems to us to be an inadvertent reference to a weakness possessed by appellant, part of which is certainly borne out by the evidence herein, offered voluntarily for the purpose only of identifying the appellant, and we do not think any serious error was committed by the court in leaving this description in the record. What we have here said also applies to bill of exceptions No. 5 in which complaint is made relative to allowing the deputy sheriff Sam Hutson to detail to the jury the above conversations had with him by the two witnesses, which statement contained the whole conversations supposed to have been had with O. B. Gordon and James Boykin. Such testimony has an added virtue, when detailed by Mr. Hutson, on account of the fact that it was the information upon which he claimed that he and the sheriff acted when they approached the appellant in an attempt to arrest him at the scene of the killing, he also claiming to have acted at such time upon the appearance of appellant as a drunken man.

Bill of exceptions No. 7 complains of the asking by the district attorney of the following question to jailer Tom Abel, in speaking of the appellant who was taken to the Lubbock County jail on the night of the homicide: "He was scared to death that night wasn't he, Tom?" to which the witness answered "Yes." Whereupon the said attorney "started to ask whether the defendant was afraid of a mob, thereupon the court and defendant's attorney both interrupted the district attorney, and the question was never finished, he being stopped at the word 'mob,' and the court instructed the jury not to consider any mention of a mob," these last quotations being the court's qualification of said bill. The matter of appellant's fright was admissible as showing that he knew that he had committed some offense against the law, and probably recognized the enormity thereof, which knowledge would be in contravention of the testimony that he gave wherein he stated that he had no knowledge nor recollection of what he had done during the latter part of

the afternoon in which the homicide took place. The reference by the district attorney to appellant's fear of a mob should not have been made, but in the light of the trial court's qualification of said bill, and his immediate instruction relative thereto, we do not think any error was shown therein. It will also be noticed that the "mob" thus referred to was on the night of the killing, about nineteen days before this trial, and no suggestion of any such at the time of the trial is found in the record.

Bill of exceptions No. 8 complains of the district attorney's statement in his closing argument to the jury wherein he made a statement, in substance, that the appellant fired a shot in Willie Foster's house. In our opinion such statement could be called a fair inference from the testimony, but in any event it would not seem to us to be of sufficient gravity to call for an extended consideration thereof, and we can see no serious error therein.

In the appellant's objections to the court's charge he levels an exception at the following paragraph thereof:

"You are charged that the laws of this State provide that neither intoxication nor temporary insanity of mind produced by the voluntary recent use of ardent spirits shall constitute any excuse for the commission of crime. Mere intoxication will not mitigate the penalty for crime, but to have that effect it must have reached the point of temporary insanity, which is that degree of insanity that deprives a person of the capacity and power to distinguish between right and wrong and to understand the nature and quality of the act charged against him."

And in his special charge, which the court refused, he requested the court to instruct the jury as follows:

"You are instructed, as part of the law in this case, that the jury may take into consideration the evidence before them as to the drunkenness of the defendant at the time of the shooting in question in determining whether the defendant had at the time the intent to commit the offense of murder, as that offense is defined in the charge of the court."

In the Clore Case, 26 Texas Crim. App., 625, decided in 1888, this court held correct the following charge:

"The jury are charged that intoxication produced by voluntary recent use of ardent spirits constitutes no excuse for the commission of crime, nor does intoxication mitigate either the degree or the penalty of the crime."

This is a copy of the statute, Art. 41, Penal Code, at that time, now Art. 36, as far as it goes, but the statute goes further in the following language:

"But evidence of temporary insanity produced by such use of ardent spirits may be introduced by the defendant in any criminal prosecution in mitigation of the penalty attached to the offense for which he is being tried * * *."

In the case of Clinton v. State, 104 S. W. (2d) 39, Judge Hawkins wrote on motion for a rehearing a very carefully considered and illuminating opinion reviewing the history of Article 36, P. C., and collating and discussing the decisions relative thereto as they gradually developed into what is now the settled law of this State, and we see no reason for a further citation of such authorities.

Suffice it to say that we gather therefrom that mere intoxication is never any defense to the commission of a crime, and can never be used as such, neither as to intent nor a question of guilt; however, if temporary insanity be induced by the use of ardent spirits, such can be shown, and if the jury sees proper, they could use such insanity only in mitigation of the penalty, but such mitigation is a matter to be determined by the jury only in their proper discretion. One can not defend on account of a lack of intent; the failure to have an intent being based on the fact of his intoxication by the use of ardent spirits. See Doyle v. State, 59 Texas Crim. Rep., 43, 126 S. W. Rep., 1131, wherein Judge Davidson held that under such circumstances it was only necessary for the court to charge on the law as laid down in the statute.

We have carefully considered every proposition raised by the appellant's attorneys, who were appointed by the court, and who deserve commendation for their efforts in his behalf. We find the appellant's actions on the afternoon of the homicide evidencing a disposition that shows a malicious condition of his mind that seems to us to be fatally bent on mischief; we find him at the moment of the killing, and when accosted by the sheriff, in possession of a pistol, and presumably having the same in his hand, shooting the sheriff four times, from which wounds the sheriff soon thereafter died, at which time the eye-witness, deputy sheriff Hutson, hit the gun hand of appellant and held it down, saying "Leroy, drop that gun. Don't do that," and appellant replied: "Hell no, I won't drop my gun. I will kill both you damn laws," and at that time firing such pistol in the ground, thus further evidencing his malicious intent by words as well as acts. We think all this testimony relative to his acts in the afternoon and evening admissible with a view of showing the appellant's reckless disregard of the safety of anyone and every one who might antagonize him, and as show-

ing a malignant disposition in regard to all persons with whom he might come in contact. See Helvenston v. State, 53 Texas Crim. Rep., 636.

We have written at length in this matter on account of the severity of the penalty, and have considered this case from all the angles presented to us, and it seems to us that the appellant has had a fair trial under the law and the facts, and we have no alternative other than to affirm the judgment of the court below. In accordance therewith the judgment is affirmed.

*Affirmed.*