Austin Arren **BERRY**, Jr., Appellant,

v.

The **STATE** of Texas, Appellee.

No. 42126.

Court of Criminal Appeals of Texas.

June 4, 1969.

Rehearing Denied July 16, 1969.

Pike Powers (Court appointed), Ramie Griffin (Court appointed), Beaumont, for appellant.

W. C. Lindsey, Dist. Atty., John R. DeWitt, Asst. Dist. Atty., Beaumont, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The conviction is for murder without malice; the punishment, five years.

The first ground of error asserts that the trial court erred in refusing the motion of the appellant to suppress the testimony of John Cary Brown (age seven) based upon his deposition for the reason that the deposition reveals that he was not sufficiently intelligent to understand and relate the transactions about which he was examined.

The fourth ground urged is that:

"The Trial Court erred in admitting the testimony of seven year old John Cary Brown after proper objection by the defendant, as it is manifest from the face of the record that during the Court's examination of the witness that he was able to answer only a limited number of the questions propounded to him and that the questions answered were only made in the form of 'Yes, Sir.' or 'No, Sir', or in inaudible, monosyllabic, responses and therefore, the witness was unable to relate transactions about which he was interrogated and was not sufficiently intelligent enough to understand the nature and obligation of the oath."

The first and fourth grounds of error will be considered together.

Art. 38.06, Vernon's Ann.C.C.P., provides, in part, that all persons are competent to testify in *criminal cases* except:

"Children or other persons who, after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath."

In support of his position, the appellant analyzes the testimony of the witness, John Cary Brown, before the court while testing his competency as a witness, before the jury as a witness, and in his deposition by pointing to the numerous "no answers", "Yes, sir" answers, brief replies, and the court reporter's notes certifying his nodding or his shaking of his head to questions. The witness testified that he went to Oakland School but did not know the town where the school was located. It is pointed out that he did not get promoted in school, and that he testified that he had three sisters when in fact he had no sisters. However, the step-grandmother testified that he was a pupil in Oakland School in Beaumont where the family lived when his mother was killed, and it was his transfer to the Opelousas, Louisiana school that caused his failure to be promoted. The step-grandmother also testified that when John Cary Brown came to live in her home she had three small girls, and "they call each other sisters and brothers because I'm bringing them up together, and they was all the same age." The witness also testified that Austin (appellant) got a pistol "out of her (deceased) purse" and in his deposition, the witness had testified that "Austin had the gun in his pocket." It appears from the testimony that the appellant could have done both, but there could have been a contradiction. The appellant also claims that the testimony of the witness could have been the result of the influence of the grandfather and the step-grandmother with whom he lived after his mother's death. The testimony given by the witness during the trial was substantially the same as the account given by him on the night of the killing and before the grandparents took custody of him. The testimony of the witness was supported and corroborated by that of a neighbor

who testified that he lived next door, about four feet from the deceased's house and that, "The widow was up." The neighbor further testified in part as follows:

"A Well, in a few minutes I heard Helen (deceased) holler, 'don't do that. Please don't do that.' And the kids screamed. And the kids all were screaming, and then I heard a gunshot, and I heard something fall, and when something fell, then, just about five or six seconds after that I heard Austin (appellant) say, 'Baby, did it hit you? Honey, did I—Oh, Lord, did it hit you? Did I hit you? Did it hit you?' She never said nothing. Then he told her, he said, 'Take this. Take this in your hand.' He said 'Take this. Take this.' And she never said nothing."

■ The testimony of the young boy reveals that he knew it was wrong not to tell the truth, and that he understood that he would be punished if he did not tell the truth; and that he was present and could sufficiently and intelligently relate what he saw and heard at the time his mother was shot. From the facts as they appear in the record, it is concluded that the court did not abuse his discretion in refusing the motion to suppress and in permitting the witness to testify. Nichols v. State, 99 Tex.Cr.R. 504, 270 S.W. 555; Rocha v. State, 148 Tex.Cr.R. 237, 186 S.W.2d 267; Studer v. State, 159 Tex.Cr.R. 598, 265 S.W.2d 833; Hines v. State, 160 Tex.Cr.R. 284, 268 S.W.2d 459; Smith v. State, Tex. Cr.App., 410 S.W.2d 642. The first and fourth grounds of error are overruled.

■ Ground of error No. two:

"The Trial Court erred in overruling the Defendant's motion for a mis-trial following the appearance of an article in the Beaumont Enterprise on July 25, 1967, the second day of the trial, which quoted the testimony of John Cary Brown to the effect, 'after the six-year old son of the victim told police he saw Austin Berry, Jr. shoot her with a small calibre pistol and then placed the weapon in her hand.' before he had been called as a witness and before his competency had been determined by the Court."

This ground of error does not assert that the jury saw or had any knowledge of the contents of the newspaper article. The record does not reflect that the jury saw or had any knowledge of the article. No error is presented.

■ No abuse of discretion appears in the court permitting the state to re-open its case and introduce additional evidence before the charge was read to the jury. Art. 36.02, V.A.C.C.P.; 1 Branch 2d 420 Sec. 398; Mixon v. State, Tex.Cr.App., 365 S.W.2d 364; Calzada v. State, Tex.Cr.App., 416 S.W.2d 429.

Error is urged on the ground that the trial court erred in refusing his motion for a continuance due to the absence of the witness Broussard.

The motion was not called to the trial court's attention until after the voir dire of the jury had begun. Art. 29.13, V.A.C.C.P.

■ Other than the motion, there is no showing under oath or by affidavit what the witness would have testified to had he been present at the trial. To warrant a reversal, there should have been a proper and timely showing that the witness would have testified to something material to the defense. No error is presented. Massoletti v. State, 165 Tex.Cr.R. 120, 303 S.W.2d 412; May v. State, 171 Tex.Cr.R. 497, 350 S.W.2d 924.

■ The sixth ground of error reveals that after the last witness had testified and immediately before the appellant announced that he rested his case, he moved for a mistrial due to the absence of the state's witness Dr. Starr.

The basis for this ground of error is reflected only in the transcript of the court reporter's notes.

Without considering its manner of presentation, the disposition here is for the

same reasons given above in considering the absence of the witness Broussard.

The seventh ground of error complains of the failure of the court to charge the jury on appellant's defense of accident.

■ The evidence failed to raise the issue of accident. No error is presented.

The judgment is affirmed.