**Guadalupe ROMERO, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 43983.

Court of Criminal Appeals of Texas.

July 7, 1971.

Rehearing Denied Oct. 26, 1971.

Abel Toscano, Jr., Harlingen, Lopez, Galindo & Davidson by Jerry Davidson, Brownsville, for appellant.

F. T. Graham, Dist. Atty., and Menton Murray, Jr., Asst. Dist. Atty., Brownsville, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for murder. The punishment was assessed by the jury at fifty years.

The sufficiency of the evidence is challenged.

■ The record reflects that the appellant had been drinking wine for some time. He went to a bar or beer joint with some friends, but the bar maid would not serve him beer because he was drunk. The deceased, Alfredo Gonzalez, and the appellant started to leave the bar at the same time, and they bumped together a couple of times. Romero was heard to say, "What have I done to you, cunado (brother-in-law)?" Juan Garcia saw Gonzalez grabbing his chest and saw blood on Gonzalez' hands. The operator of the bar testified that she saw that Romero had " * * * something here, a little point only. I didn't notice what it was," and that Andres Gutierrez said, "Call an ambulance because this man is dying." Garcia followed Romero who said that he had killed Gutierrez. Garcia then saw a knife in Romero's hand. The knife was thrown near a shed. Garcia later showed the officers the location and they found the knife. The knife was introduced into evidence.

Romero testified that the knife looked like his, but he did not remember anything after he was refused a beer.

Dr. David Flory, a pathologist, testified that the stab wound had passed into the heart near the apex into the chamber of the right ventricle across the chamber and

scratched the lining on the opposite side; that such a stab wound would be fatal under ordinary circumstances within a short period of time. He testified that complications from the stab wound were the cause of death.

Dr. Robert Jackson testified that he operated on Gonzalez and that the stab wound went about 1½ inches into the heart. He testified that Gonzalez died from complications from the original injury.

"The intent of the defendant may always be ascertained as inferred from the means used and the wounds inflicted by him." 4 Branch's Ann.P.C.2d, Section 2190, pp. 535–536.

In Young v. State, Tex.Cr.App., 384 S.W.2d 710, the death was caused by a stab wound in the lung. This Court wrote:

" * * * In the case at bar the wound was so serious that in the absence of proper care the wound probably would have produced death. The jury was warranted in concluding from the seriousness of the wound that the instrument used to inflict the lacerations and puncture was, from the manner of its use, a deadly weapon, and that the appellant intended to kill * * *."

See Johnson v. State, Tex.Cr.App., 421 S.W.2d 918.

The jury had sufficient evidence to conclude that Romero voluntarily with malice aforethought killed Gonzalez by stabbing him with a knife.

■ Next, it is contended that the court erred in refusing to charge on aggravated assault.

In Gonzales v. State, Tex.Cr.App., 449 S.W.2d 49, the murder was caused by a stab wound. Gonzales had apparently crashed a party. He testified that he did not do the stabbing. A request for a charge on aggravated assault was denied. This Court held that the evidence did not raise the issue of aggravated assault.

The appellant relies upon Moree v. State, 147 Tex.Cr.R. 564, 183 S.W.2d 166; Barnett v. State, 144 Tex.Cr.R. 249, 162 S.W.2d 411, and Thompson v. State, 144 Tex.Cr.R. 321, 162 S.W.2d 728. These cases are distinguishable from the facts in the present case. Each of the cases relied upon involved an instrument, which in the manner of its use, was not ordinarily calculated to cause death. Fist fights were involved in two of the cases and the instrument in the third was an unknown blunt instrument.

No error has been shown.

■ Lastly, complaint is made because the court refused to charge at the guilt or innocence stage of the trial that the voluntary use of intoxicating liquor by him could be considered by the jury to determine the condition of his mind at the time of the occasion in determining his guilt or innocence.

Article 36, Vernon's Ann.P.C., provides:

"Neither intoxication nor temporary insanity of mind produced by the voluntary recent use of ardent spirits, intoxicating liquor, narcotics, or dangerous drugs, or a combination thereof, shall constitute any excuse for the commission of crime. Evidence of temporary insanity produced, however, by such use of ardent spirits, intoxicating liquor, narcotics, or dangerous drugs, or a combination thereof, may be introduced by the defendant in mitigation of the penalty attached to the offense for which he is being tried.

"When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was brought about by the immoderate use of intoxicating liquor, narcotics, or dangerous drugs, or by a combination thereof, the judge shall charge the jury in accordance with the provisions of this Article."

In Garcia v. State, Tex.Cr.App., 453 S.W.2d 822, a charge was requested that if Garcia was unable to form an intent be-

cause of intoxication, he should be acquitted. This Court wrote:

"The contention that intoxication would prevent an accused forming the intent to commit the crime is in conflict with Article 36, Vernon's Ann.P.C., which provides that intoxication is no defense to crime. Kelly v. State, Tex. Cr.App., 442 S.W.2d 726; Cohron v. State, Tex.Cr.App., 413 S.W.2d 112; Dubois v. State, 164 Tex.Cr.R. 557, 301 S.W.2d 97."

The court did not err in refusing the instruction.

No reversible error has been shown. The judgment is affirmed.