**Millard Dean CARR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43847.**

Court of Criminal Appeals of Texas.

Jan. 4, 1972.

Rehearing Denied Feb. 16, 1972.

Joe Bob Brown, John W. Broadfoot, Amarillo, for appellant.

Tom Curtis, Dist. Atty., and Hugh Russell, Asst. Dist. Atty., Amarillo, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is from a conviction for assault with intent to rape where the punishment was assessed at 10 years.

The appeal was earlier dismissed because notice of appeal had been given prior to the pronouncement of sentence. See Article 44.08(c), Vernon's Ann.C.C.P. The trial court has now permitted the giving of a belated notice of appeal under the provisions of Article 44.08(e), V.A.C.C.P. This court now has jurisdiction to review the case on appeal.

At the outset we shall consider appellant's challenge to the sufficiency of the evidence to sustain the conviction.

Karen Droan, age 9, testified that on the night of July 4, 1969, she and her sisters, ages 4 and 7, were alone in their mother's trailer house. She related that at approximately 9:30 p. m. the appellant forced his way into the house after she refused to admit him; that he tried to make her hug him and told her to lay on the couch and pull down her clothes. When she refused he began choking her but stopped to put out a cigarette, at which time she ran and awakened her sleeping sisters. Karen then revealed the appellant told her to put the sisters back to bed or "he was going to get all three of us." Karen then hid the sisters under the bed and left by the back door, stopping three men who were passing and asked for help. She testified that at this time the appellant left the trailer house and got in a car and drove off.

Karen later identified the appellant in a police lineup.

The State also offered evidence that appellant's fingerprint had been lifted from a glass table in the trailer house.

Patrick Bowers testified that on the night in question he and his brothers-in-law, Robert Brown and Dale Tarbet, had been to the Guys and Dolls Lounge, and that as they were leaving a little girl ran from a nearby trailer house and stated a man was in her house trying to kill her and her sisters; that he observed a man come out of the house, get into a blue and white Chevrolet, a Chevy II, and drive off. Bowers and his companions followed, but because of their speed they were unable to turn when the Chevrolet turned and contact was lost. When they returned to the trailer house they saw the car in question on the parking lot of the Guys and Dolls Lounge. The police were called. After a policeman finally got a response from the trailer house a little girl ran out, grabbed the policeman around the waist and said a man had been there trying to rape her and her sisters. As the officer and others walked toward the Chevrolet a man entered the car and drove off despite the officer's command to halt. Bowers was unable to identify the man in the Chevrolet.

Robert Brown substantially corroborated Bowers' testimony, adding that they had obtained the license number of the car when they first started to follow it.

Officer Hindergradt, Amarillo police department, testified he responded to the call, and his testimony as to what occurred after his arrival at the trailer house also cor-

roborated that of Bowers. He related that he hollered "stop" as the Chevrolet left the parking lot and when it did not he obtained the license number, being 1969 Texas plate BXY 951. He identified State's Exhibit #1 as being a picture of the car he had seen that night.

It was shown by other evidence that the vehicle was registered in the name of appellant's wife used prior to their marriage and it was shown that appellant was using and had control of the car on June 26, 1969.

The appellant did not testify but offered alibi testimony and the fact he was using a Ford station wagon on the date in question.

The defense of alibi was submitted to the jury and by its verdict rejected.

We find the evidence, considered in the light most favorable to the verdict, sufficient to sustain the conviction.

■ Next, appellant complains the court erred in permitting the complaining witness, a child nine years old, to testify. There was no objection urged as to such testimony or any question of her competency as a witness raised during the trial. Usually, the competence of a witness is waived when she is permitted to testify without objection. English v. State, 170 Tex.Cr.R. 56, 338 S.W.2d 446. Unless a child's testimony shows on its face that he or she was incompetent to testify complaint as to her incompetency raised for the first time on motion for new trial or on appeal comes too late. Dubois v. State, 164 Tex. Cr.R. 557, 301 S.W.2d 97, cert. den. 356 U.S. 921, 78 S.Ct. 705, 2 L.Ed.2d 717. See also 4 Branch's Ann.P.C., 2d ed., Sec. 1945, p. 264.

The testimony here in question certainly does not reflect on its face that the witness was incompetent. In fact, the contrary is shown. Further, it is observed that subsequently on its own motion the court intervened and refused to permit the 7 year old sister of the complaining witness to testify on the ground of incompetency.

No error is shown.

■ Further, appellant contends he was deprived of due process because the court asked questions of witnesses, permitted jurors to ask questions of the witnesses and allowed "a spectator to rise in the courtroom and ask questions." He urges he was subjected to an unbelievable "Perry Mason" type of trial, particularly because he was representing himself at the time of trial.

The ground of error appears to be multifarious and does not point out the particular portions of the record to which the appellant may have reference. For failing to comply with Article 40.09, V.A.C.C.P., nothing is presented for review. A study of the record in connection with other grounds of error reflects that during the cross-examination of the complaining witness the court instructed her not to nod her head but to answer the question. At this point the transcription of the court reporter's notes reflects:

"Spectator: Wait a minute, Your Honor—

"THE COURT: Now, you just stay out of this, please."

Nothing else as to a spectator appears in the record.

On several occasions "a juror" was permitted to ask questions. Whether this was the same juror or different jurors is not shown. Each such question asked served to elicit from the particular witness the fact that he was unable to make an identification of the appellant as the man he saw. We fail to perceive how these questions permitted by the court without objection were improper or harmful to the appellant. Nowhere in the record have we found any interrogation of a witness by the court that could be considered improper. Cf. 1 Branch's Ann.P.C., 2d ed., Sec. 288, p. 331.

The most serious of appellant's contentions is that the court erred in allowing him to be tried without the aid of counsel.

This record reflects that at the time of trial appellant was 30 years old, had been previously convicted of a felony in Ohio and had on his own studied law during and after his confinement on such conviction and had on a previous occasion acted as his own counsel during a divorce action.

The alleged offense was shown to have occurred on July 4, 1969. On July 5, 1969, the appellant was arrested and advised of his rights by the magistrate. See Article 15.17, V.A.C.C.P. The appellant, who was employed at $1.60 an hour by the Atex Oil Company and who also leased a service station, made a $15,000 bond. On July 8, 1969, he consulted with attorney Charles Fairweather concerning the charges against him. The indictment was returned on July 9 and the appellant was re-arrested and bail set at $50,000 at the request of the district attorney. A copy of the indictment was served upon the appellant on July 10, and on the same day he appeared in District Court and advised the judge that Fairweather was his employed counsel. The following day the appellate wrote the court requesting appointment of counsel, and the court appointed Joe Bob Brown who subsequently talked with the appellant in jail. At the docket call on August 4 Fairweather informed the court he would represent the appellant whether he was paid or not. It appears then that Fairweather was appointed by the court and Brown was permitted to withdraw.

It also appears that while in jail the appellant talked with attorneys Wolfram and Humphreys though neither entered the case as his counsel. Subsequently on August 25, 1969, Fairweather requested the appointment of a psychiatrist to examine the appellant. On September 8, 1969, the trial date agreed upon, a request was made to pass the case until September 15, 1969, since the psychiatrist had not "reached a diagnosis." By letter dated September 11, 1969, the psychiatrist informed the court that in his opinion the appellant was legally sane.

On September 16, 1969, the appellant appeared in court with attorney Fairweather. Although Fairweather stated he was ready and prepared for trial, the appellant requested his discharge and the court honored the request. The court then stated its intention to vacate the setting and appoint the appellant any lawyer he (the appellant) named or allow him to employ counsel of his own choice. When appellant discovered this meant he would not go to trial the next day, he declined the offer. The record reflects the following:

"THE COURT: . . . certainly you don't want to go to trial on this case tomorrow without a lawyer, do you?

"MR. CARR: Well, I can't see where it would be any different than what I have.

"THE COURT: That is not in answer to my question.

"MR. CARR: Well, *I just as soon go to court without one.*

"THE COURT: *You had just as soon go to trial tomorrow without any lawyer, is that your request?*

"MR. CARR: *Yes, sir.*

"THE COURT: All right. We will try you in the morning then." (emphasis supplied)

The record also reflects:

"THE COURT: I will expect you to go to trial then tomorrow, because that is your request. You understand that the court is telling you that you can have a postponement on it in order to get more time to get your witnesses here, if you want it.

"MR. CARR: (Appellant) I think we could probably find them. Marlow J. Barney is the guy."

Barney subsequently testified.

At the time of trial the jury panel was informed, without objection, that the appellant had agreed to represent himself.

It is then observed that in one of the many letters written to the trial judge after conviction we find the following:

"Now, believe me, I'm the first to admit that when I agreed to represent myself at a trial in your court, I didn't choose very good counsel.

"But, there are some matters that require only good common sense and not legal knowledge."

In another part of the same letter he takes the trial court to task for setting an excessive bond and then concludes " . . . but you at least granted me a speedy trial."

After conviction appellant requested the appointment of counsel and the court again appointed Joe Bob Brown. Thereafter the appellant became disenchanted with such counsel and requested his removal. The court heeded such request and at appellant's suggestion appointed John Broadfoot who presently represents the appellant on appeal.

One cannot read this record without being impressed with the fact that the trial court leaned over backwards to safeguard this appellant's rights, to honor all of his requests, and to see that he had a fair trial.

It is easy to sit upon an appellate bench, particularly if you have been a district judge, and observe that in the case at bar perhaps the trial judge should not have permitted Fairweather's withdrawal, particularly in light of appellant's insistence upon a speedy trial, see Harris v. State, Tex.Cr.App., 425 S.W.2d 642, or if the withdrawal was to be allowed the appellant, despite his request, should not have been put to trial until other counsel had been appointed and was prepared for trial.

The question is not what may have been the better practice, but whether there was an intelligent and competent waiver of the right to counsel.

While the educational attainments of this appellant, age 30 at time of trial, are not revealed by this record, we note that he had previous experience with law enforcement officers and courts, had studied law on his own, and had acted as his own counsel in a civil matter. His numerous letters found throughout this record are articulate. He was gainfully employed at the time of his arrest, and an examination revealed he was sane. He was advised of the nature of the charges by a magistrate, later served with a copy of the indictment, consulted with both of his appointed counsel and conversed with two other lawyers, all prior to waiver of counsel. The trial court clearly informed him of his right to counsel and made a determination in the first place that he competently and intelligently waived counsel and wanted to exercise his constitutional right to a speedy trial.

Under the totality of circumstances presented, we decline to disturb the trial court's finding.

■ Appellant also urges that the "court erred in appointing the District Attorney to assist" him "in the procurement of his witnesses." After insisting upon the discharge of his counsel and upon trial the following day the appellant inquired about subpoenaing two witnesses. The court stated the district attorney would assist "you to that extent," but warned the appellant that merely with names and only last known addresses the witnesses might not be able to be located in time for the trial. The court offered the appellant a postponement if his witnesses were not present but the offer was declined. Marita Mathews and Marlow J. Barney appear to be the two witnesses in question. The next morning appellant announced ready for trial, despite the absence of the witness Mathews. Barney, as earlier noted, testified. After both sides closed, the appellant requested the presence of Mathews and at-

torney Humphreys. The assistant district attorney detailed the efforts made by the State to locate Mathews and that it had been determined she was out of the state and that Humphreys, who was requested after the trial commenced, was in Oklahoma the day of trial and Lomax, another witness requested by appellant, was determined to be in Las Vegas, Nevada. Thereafter the record reflects:

"MR. CARR (Appellant): I just wanted it shown that they were out of the state and unable to be here.

"THE COURT: That's right, and also show that no request was made for Hugh Humphreys until today, and you were aware this morning that Marita was not here.

"MR. CARR: Yes, sir."

While the practice of relying upon a prosecutor to represent a counselless · defendant or assist in procuring subpoenas is not looked upon with favor, see American Bar Assoc. Project on Minimum Standards for Criminal Justice, Standards Relating To Trial By Jury, Sec. 12, The Unsoundness Of Relying On the Prosecutor To Protect the Defendant, p. 35, we fail to perceive how reversible error in the instant case is reflected.

■ Likewise, we find no merit in appellant's contention that the court erred in failing to grant a continuance after the trial had commenced when it became apparent that the appellant lacked two "material" witnesses. We find no such motion, oral or written, having been made. While Article 29.13, V.A.C.C.P., provides for such a motion under certain circumstances (apparently not applicable here), the motion was not in writing, see Article 29.03, V.A.C.C.P.; Cross v. State, 99 Tex.Cr.R. 207, 268 S.W. 931; Barbee v. State, Tex. Cr.App., 432 S.W.2d 78, cert. den., 395 U.

S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241; nor was there a timely showing that witnesses would have testified to something material to defense. Berry v. State, Tex.Cr.App., 442 S.W.2d 713.

■ For many of the same reasons there is no merit to the claim that the court put the appellant to trial without the presence of two material witnesses. He announced "ready" knowing they were not present.

■ The appellant also urges that he was denied due process by the denial of reasonable bail. After indictment the bail was raised from $15,000 to $50,000, at the prosecutor's request. The reasons for so doing do not appear of record, though the court steadfastly refused to reduce the same. After conviction bail pending appeal was set at $10,000 which bail appellant has been unable to make. While the terms of the Eighth Amendment, United States Constitution, prohibit excessive bail, see also Article I, Sec. 11, Texas Constitution, Vernon's Ann.St., we fail to find the appellant has shown that the bail was in fact excessive or how he was deprived of due process or a fair trial by result of the court's action.

■ The appellant advances the theory that the court erred in failing to grant a new trial when it became apparent "evidence of an exculpatory nature had been suppressed." The ground of error nor the appellant's brief informs the court of the evidence to which appellant has reference. Nothing is presented for review. Article 40.09, Sec. 9, V.A.C.C.P.

And we are not impressed with appellant's general claim that the record "when taken as a whole" shows that he was deprived of due process and a fair trial.

Finding no reversible error, the judgment is affirmed.