

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00027-CR

———————————————

LEE MINNIS, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. F17-3044-367

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

Appellant Lee Minnis challenges his conviction for continuous sexual abuse of a child. On appeal, he raises three issues. None have merit.

In his first issue, Minnis contends that the child complainant was incompetent to testify. But Minnis did not preserve error, and even if he had, the record does not show that the complainant was incompetent.

In his second issue, Minnis contests the trial court's decision to allow a forensic interviewer to testify as an outcry witness. But when the trial court asked Minnis if he had any objection to her testimony, Minnis stated that he had none, and the issue is therefore procedurally defaulted.

In his third issue, Minnis challenges the sufficiency of the evidence to show that the acts of sexual abuse were committed over a period of thirty days or more. But the proof at trial tethered different acts of abuse to both sides of a summer, which by necessity spanned more than thirty days. The evidence is therefore sufficient to show the only element that Minnis has disputed.

We affirm.

## I. BACKGROUND

Addison[1] was six years old when she began spending weekdays during the summer at her grandparents' house. The first few days of the summer were normal,

---

[1]To protect the complainant's identity, we use aliases as necessary. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982); *Riddle v. State*, No.

but then her uncle Lee Minnis began to abuse her in the garage.  The abuse continued until the end of the summer, when she told her father Saul and his then-girlfriend Mary what Minnis had done.

Minnis was indicted for continuous sexual abuse of a child on November 20, 2017.  *See* Tex. Penal Code Ann. § 21.02.  At trial, the jury found Minnis guilty as charged and sentenced him to life imprisonment.  Minnis appeals.

## II.    COMPETENCY OF CHILD WITNESS

In his first issue, Minnis contends that Addison was incompetent to testify because of her age and memory issues.  He highlights several instances when Addison responded "I forgot" to questions about the abuse, such as when the State asked whether her clothes were on or off when Minnis abused her.  Minnis also emphasizes an exchange wherein Addison was asked whether she remembered what happened when her hands touched Minnis's private parts; Addison said she thought so, but she wasn't sure because her "memory is not really good."[2]  Finally, Minnis notes another point at trial when the State asked Addison how she knew what to do when Minnis put his penis in her mouth, and Addison replied that she forgot and said "I forget a lot of

_____

02-18-00388-CR, 2019 WL 3334429, at *1 n.1 (Tex. App.—Fort Worth July 25, 2019, no pet.) (mem. op., not designated for publication).

[2]Minnis neglects to mention that, moments later, she qualified her statement, saying, "Well it's kind of good, but I'm still not remembering every single little detail."

things." Minnis asserts that in light of Addison's age and the lapses in her memory, the record shows on its face that Addison was patently incompetent to testify.

As Minnis concedes, he did not object to Addison's competency at trial. However, he submits that under 46-year-old precedent from our high court—and a handful of intermediate-court cases that have continued to apply it—lack of preservation may be excused if the child's incompetency appears on the face of the record. *See Griffin v. State*, 514 S.W.2d 278, 281 (Tex. Crim. App. 1974) (quoting *Carr v. State*, 475 S.W.2d 755, 757 (Tex. Crim. App. 1972)); *Baldit v. State*, 522 S.W.3d 753, 762 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Langley v. State*, No. 12-14-00095-CR, 2015 WL 2394144, at *1–2 (Tex. App.—Tyler May 20, 2015, no pet.) (mem. op., not designated for publication); *Turley v. State*, No. 06-10-00062-CR, 2010 WL 3420800, at *3 (Tex. App.—Texarkana Sept. 1, 2010, no pet.) (mem. op., not designated for publication). The critical passage from *Griffin* reads as follows:

> Usually, the competence of a witness is waived when she is permitted to testify without objection. *Unless a child's testimony shows on its face that he or she was incompetent to testify*[,] complaint as to her incompetency raised for the first time on motion for new trial or on appeal comes too late.

514 S.W.2d at 281 (emphasis added) (citations omitted).

But the Texas Court of Criminal Appeals was not unaware of its own precedent when it later held, on the general subject of witness competency, "It is a familiar rule of law that the failure to object to a witness's competency to testify operates as a waiver of the witness's qualifications and may not be raised for the first time on appeal."

4

*Matson v. State*, 819 S.W.2d 839, 852 (Tex. Crim. App. 1991); *see McGinn v. State*, 961 S.W.2d 161, 165–66 (Tex. Crim. App. 1998) (deeming child-competency complaint to be unpreserved). Indeed, in recent cases, we have held that a failure to object to the child witness's competency waives the issue without exception. *Deer v. State*, No. 02-10-00443-CR, 2012 WL 42954, at *1 (Tex. App.—Fort Worth Jan. 5, 2012, no pet.) (mem. op., not designated for publication); *Martin v. State*, Nos. 02-07-308-CR to 02-07-316-CR, 2008 WL 4831345, at *7–8 (Tex. App.—Fort Worth Nov. 6, 2008, pet. ref'd) (mem. op., not designated for publication); *Stout v. State*, No. 2-04-106-CR, 2005 WL 994715, at *1 (Tex. App.—Fort Worth Apr. 28, 2005, pet. ref'd) (per curiam) (mem. op., not designated for publication); *Rich v. State*, 823 S.W.2d 420, 421 (Tex. App.—Fort Worth 1992, pet. ref'd) ("We first note that Rich may not raise the issue of the competency of the child for the first time on appeal."). Preservation of error is a systemic requirement, *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009), and there is little reason to exempt child competency from that system; we have reasoned that preservation is arguably more important in the context of a competency challenge, not less so, "because Texas Rule of Evidence 601 creates a presumption that a person is competent to testify, and the trial court has no duty to conduct a preliminary competency examination on its own motion." *Deer*, 2012 WL 42954, at *1 n.3.

Regardless, even setting preservation issues aside, the record does not show that Addison was incompetent to testify.

5

A trial court's determination of whether a child witness is competent to testify will not be disturbed upon review absent an abuse of discretion. *Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995). We review the child's responses to qualification questions as well as the child's entire testimony to determine whether the trial court's ruling constituted an abuse of discretion. *Davis v. State*, 268 S.W.3d 683, 699 (Tex. App.—Fort Worth 2008, pet. ref'd). A trial court does not abuse its discretion if its ruling on a child witness's competency was within the zone of reasonable disagreement. *Keller v. State*, 604 S.W.3d 214, 223 (Tex. App.—Dallas 2020, pet. ref'd); *Hernandez v. State*, No. 02-14-00262-CR, 2016 WL 4903206, at *5 (Tex. App.—Fort Worth Sept. 15, 2016, pet. ref'd) (mem. op., not designated for publication).

Under Rule 601, "[a]ll witnesses are presumed competent to testify, including children." *Gonzalez v. State*, No. 02-14-00229-CR, 2015 WL 9244986, at *3 (Tex. App.—Fort Worth Dec. 17, 2015, pet. ref'd) (mem. op., not designated for publication) (citing Tex. R. Evid. 601); *Davis*, 268 S.W.3d at 699. "[T]he party seeking to exclude the witness from testifying must raise the issue of his competency and shoulders the burden of establishing incompetency." *Gilley v. State*, 418 S.W.3d 114, 120 (Tex. Crim. App. 2014). There are three elements to consider in determining whether a witness is competent to testify: (1) the ability to intelligently observe the events in question at the time of the occurrence, (2) the capacity to recollect the events, and (3) the capacity to narrate the events. *Watson v. State*, 596 S.W.2d 867, 870 (Tex. Crim. App. [Panel Op.] 1980); *Davis*, 268 S.W.3d at 699. "The third element, involving the capacity to narrate,

6

requires that the witness is able to understand the questions asked, frame intelligent answers to those questions, and understand the moral responsibility to tell the truth." *Davis*, 268 S.W.3d at 699. "There is no precise age under which a child is deemed incompetent to testify." *Baldit*, 522 S.W.3d at 761.

Addison was six years old when she was abused and eight by the time of trial. Before she began her testimony, Addison promised the judge that she would tell the truth, and she twice indicated that she knew what it meant to tell the truth. Addison demonstrated that knowledge when the State asked her, "if I told you that there were puppies sitting at that table, is that a truth or a lie," and Addison said it was a lie. When the State asked whether there were people sitting at the same table, Addison said it was true. To conclude the competency hearing, Addison again promised to be honest and tell the truth while testifying. The State asked, "Is that okay, Judge?" The judge said it was.

Addison then began her testimony, in which she demonstrated the capacity to intelligently observe events and to recall and narrate those events. *See Watson*, 596 S.W.2d at 870. She told the jury who was living at her grandparents' house—the residents included her grandparents, Minnis, and his dogs Bane and Max—and she was able to describe their habits during the summer she spent there: her "grandpa" seldom left and always seemed to be watching the news in the main house; her "nana" was also usually there; and Addison spent her time playing with Max and Bane outside and watching TV in the garage with Minnis. When asked about the abuse, Addison became emotional, and there was a break in proceedings. Following the break, Addison

explained that in the garage, Minnis made her touch his private part with her mouth and hands, and that he touched her private parts—both front and back—with his hands and his penis. She testified that Minnis touched his penis to her vagina at least once almost every day that summer, though there were a few days that it did not happen. Addison recalled that sometimes when Minnis put his private part in her mouth, white gooey stuff came out, though she could not remember how many times that occurred. When that occurred, though, Minnis would use a tissue to wipe it off and throw it in the trash. According to Addison's testimony, Minnis promised she could watch TV, but only if she let him abuse her and kept it a secret. She also gave a timeframe for the abuse: Minnis did not abuse her on the first two days she stayed at her grandparents' house that summer, but the abuse began after the first few days, and it did not stop until she told her father near the end of the summer.

To challenge Addison's competency, Minnis relies on the portions of her testimony wherein she claimed she could not remember certain details or belittled her own memory. However, "[i]nconsistencies or conflicts in a child's testimony do not automatically render the child incompetent to testify but, instead, affect the weight to be given to the child's testimony." *Martin*, 2008 WL 4831345, at *7. Likewise, inability "to recall certain facts" does not necessarily render the child incompetent. *Robinson v. State*, 368 S.W.3d 588, 604 (Tex. App.—Austin 2012, pet. ref'd).

Thus, in one recent case, we held that minor lapses in the child-complainant's memory were inconsistencies that went to the credibility of her testimony rather than

its admissibility. *Tufts v. State*, No. 02-19-00143-CR, 2020 WL 5242431, at *23 (Tex. App.—Fort Worth Sept. 3, 2020, pet. ref'd) (mem. op., not designated for publication). Similarly, in *Griffin*—the very case that Minnis relies on for the proposition that competency issues may be excused from the requirements of error preservation—the court held that a child's failure to remember certain details did not render her incompetent, especially given the emotional toll of testifying concerning sexual assault:

> Common sense dictates that it is a traumatic experience for a nine-year-old girl to appear as a witness in court. Particularly is this true where the child-witness is the prosecutrix in a case such as this. Under these circumstances, it is not surprising that a nine-year-old child might be unable to give her correct address or relate how long she had lived at a particular place.

514 S.W.2d at 281.

Therefore, regardless of any gaps in Addison's memory, we hold that the trial court did not exceed the zone of reasonable disagreement when it allowed her to testify. The child gave assurances that she knew what the truth meant and that she would tell it, and she demonstrated the ability to tell the truth. Despite the strain on her, she gave a cogent-for-her-age account of the abuse, with details concerning the time, the place, the people involved, and the nature of the abuse. Rule 601 "places the power to determine a witness'[s] competency into the hands of the trial judge." *Broussard*, 910 S.W.2d at 960. The trial court did not mishandle that authority here.

We overrule Minnis's first issue.

9

## III.   OUTCRY WITNESS

In his second issue, Minnis contends that the trial court improperly allowed Ashley Enslow to testify as an outcry witness.  Enslow conducted a forensic interview with Addison after she disclosed the abuse to her father Saul.  Minnis observes that under the outcry statute, the only one who may relay the child's outcry is "the first person" over the age of eighteen to whom the child made a statement about the offense. *See* Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a)(3).  Minnis contends that because Addison first disclosed the abuse to Saul rather than Enslow, Enslow therefore could not testify as an outcry witness.

However, when the State offered Enslow as an outcry witness after a hearing outside the presence of the jury, the trial court inquired whether there was any objection.  Counsel for Minnis stated, "No objection, Your Honor."

To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the grounds for the desired ruling with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.  Tex. R. App. P. 33.1(a)(1); *Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015).  The purpose for requiring a timely, specific objection is twofold:  (1) it informs the judge of the basis of the objection and affords her an opportunity to rule on it, and (2) it affords opposing counsel an opportunity to respond to the complaint.  *Douds*, 472 S.W.3d at 674.

10

Minnis did not make the trial court aware of his complaint through a timely request, objection, or motion. He has therefore failed to preserve error. *See Schmidt v. State*, No. 01-18-00239-CR, 2019 WL 5432049, at *3 (Tex. App.—Houston [1st Dist.] Oct. 24, 2019, pet. ref'd) (concluding that appellant failed to preserve issue of whether outcry witness was the first person to whom the child disclosed the abuse); *Hernandez v. State*, No. 2-08-478-CR, 2010 WL 1854150, at *1–2 (Tex. App.—Fort Worth May 6, 2010, no pet.) (mem. op., not designated for publication) (same).

We overrule his second issue.

## IV. SUFFICIENCY OF THE EVIDENCE

In his third issue, Minnis asserts that the State failed to sufficiently prove one element of the offense: that the sexual violations were committed over a period of at least thirty days. He maintains that none of the witnesses—not Addison or the people who heard and related her account to the jury—were able to offer specific dates for when the abuse first and last occurred. By Minnis's account, the most precise timeframe that any witness could provide was that the abuse began and ended sometime during the summer in question. Minnis contends that without more specific proof as to when the abuse took place, the jury was left to speculate as to the relevant time period, rendering the evidence insufficient to sustain his conviction for continuous sexual abuse of a child.

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

11

307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

A person commits the offense of continuous sexual abuse of a child if, during a period that is thirty days or more in duration, a person who is seventeen years of age or older commits two or more acts of sexual abuse against a child younger than fourteen years of age. Tex. Penal Code Ann. § 21.02(b). An "act of sexual abuse" includes, among other types, indecency with a child, sexual assault, aggravated sexual assault, and

sexual performance by a child. *Id.* § 21.02(c)(2)–(4), (6). "Although the exact dates of the acts of sexual abuse need not be proven, the offense of continuous sexual abuse of a child does require proof that one act of sexual abuse occurred on at least the 29th day after the day of another act of sexual abuse." *Lawson v. State*, No. 02-17-00201-CR, 2018 WL 1192478, at *4 (Tex. App.—Fort Worth Mar. 8, 2018, no pet.) (per curiam) (mem. op., not designated for publication). "However, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed." *Id.*

Multiple witnesses gave evidence concerning when the abuse occurred. According to Addison's testimony, Minnis did not abuse her for the first two days she stayed over at her grandparents' house that summer, but he began to violate her after the first few days she stayed there. The State asked, "And did it happen all the way till summer was almost over?" Addison replied, "Yeah, all the way to the end . . . ," when she told her father that Minnis was abusing her.

For his part, Saul confirmed that Addison told him about the abuse on August 25, 2017, and that no abuse took place after that. Saul also testified that during the summer in question, Addison went to her grandparents' house regularly on weekdays from June through August—a fact that was corroborated by Mary.

Two other witnesses confirmed that during their interviews with Addison, she gave a similar account of when the abuse took place. According to Enslow, Addison said that the abuse occurred over the entire summer, beginning to end. Similarly,

13

Deborah Ridge, a sexual-assault nurse examiner, testified that Addison "kept saying" that the abuse lasted from "the second day of summer to the end. So it was during that time period, multiple times."

The question is whether this evidence is sufficient to prove that two or more acts of abuse took place over a span of at least thirty days. We conclude that it is.

"Courts give wide latitude to testimony given by a child victim of sexual abuse." *Mannie v. State*, No. 2-08-224-CR, 2009 WL 2196135, at *1 (Tex. App.—Fort Worth July 23, 2009, no pet.) (per curiam) (mem. op., not designated for publication). "The victim's description of what happened to her need not be precise, and she is not expected to testify at the same level of sophistication as an adult." *Id.*

The trier of fact is entitled to "fit[] the pieces of the jigsaw puzzle together and weigh[] the credibility of each piece." *See Flowers v. State*, 220 S.W.3d 919, 923 (Tex. Crim. App. 2007). Thus, in cases such as these, reviewing courts have held that juries may piece together the timeframe of the abuse from testimony concerning a child's likely milestones, such as school years, holidays, seasons, and places where the child lived. *See, e.g.*, *Hernandez v. State*, No. 05-17-00560-CR, 2018 WL 2316026, at *4 (Tex. App.—Dallas May 22, 2018, pet. ref'd) (mem. op., not designated for publication) ("While the girls were unable to provide specific dates for when the abuse occurred, they referred to the sexual abuse occurring at different houses[,] and their mother was able to provide a timeline of when they resided at those houses."); *Lawson*, 2018 WL 1192478, at *5 (relying on testimony associating the abuse with school years, seasons,

14

and holidays to hold the evidence sufficient despite lack of specific dates); *Michell v. State*, 381 S.W.3d 554, 561–64 (Tex. App.—Eastland 2012, no pet.) (upholding conviction based on proof tying the abuse to different school years, seasons, and homes that the child complainant lived in over time).

For instance, in *Alcantar v. State*, the child complainant could not provide specific dates, but she testified that the abuse started when she was in fifth grade and continued the "whole summer" that she spent in Texas, shortly after which she moved to South Dakota for sixth grade. No. 11-13-00270-CR, 2015 WL 5191464, at *2 (Tex. App.—Eastland Aug. 21, 2015, no pet.) (mem. op., not designated for publication). When the appellant challenged the 30-day element on appeal, the court held that "[t]he jury could have reasonably concluded that the 'whole summer' was a period of time that lasted at least thirty days." *Id.* at *2–3. "'Summer' typically means the time during the year when children are out of school." *Id.* at *3. The court noted that while the word summer might technically mean the period from the summer solstice to the autumnal equinox, in the northern hemisphere it usually means "the months of June, July, and August." *Id.* (quoting Merriam-Webster's Collegiate Dictionary 1250 (11th ed. 2004)). Based on this evidence, the court held that acts of abuse occurred over a period of time that was at least thirty days in duration. *Id.*

Much like *Alcantar*, three witnesses in this case—Addison, Enslow, and Ridge—testified that the abuse lasted the entire summer, beginning a few days after the season started and lasting "all the way to the end." While the term "summer" is somewhat

malleable, the jury could have rationally believed that in the parlance of a young child, the term referred to the three-month period of June through August when children are on summer vacation. It was Addison's testimony that Minnis abused her almost every time that she went to her grandparents' house over that period, and she went to their house regularly on weekdays from June through August according to Saul's and Mary's testimony. And Saul testified that the last incident of abuse occurred before August 25. Because the proof at trial anchored different acts of abuse at each end of a season that necessarily spanned more than thirty days, the evidence is sufficient to prove the time element of continuous sexual abuse of a child. *See Machado v. State*, No. 02-15-00365-CR, 2016 WL 3962731, at *3 (Tex. App.—Fort Worth July 21, 2016, pet. ref'd) (mem. op., not designated for publication) ("[T]he record contains evidentiary puzzle pieces that the jury could have carefully fit together to rationally find beyond a reasonable doubt that appellant's sexual abuse of [the complainant] occurred over a period of thirty days or more.").

We therefore overrule Minnis's third and final issue.

## V. CONCLUSION

We affirm the judgment of conviction.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: January 7, 2021

16